1
2
3
4
5
6
7
8
9

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMITHFIELD FOODS, INC. ET AL., ) | |
| Plaintiffs, ) | CASE NO. CV 12-02254 CBM (DTBx) |
| vs. ) | |
| UNITED STATES OF AMERICA, ) | ORDER GRANTING MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF WISCONSIN |
| Defendant. ) | |

The matter before the Court is Defendant United States' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) or in the Alternative to Bifurcate.  [Docket No. 36.]

## I.    JURISDICTION

This Court has jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1), which governs claims for money damages against the United States.

## II.   PROCEDURAL AND FACTUAL OVERVIEW

There are eight Plaintiffs in this case (collectively "Plaintiffs"). Plaintiff Smithfield Foods ("Smithfield") is a Virginia Corporation with its principal place of business in Virginia.  (Plaintiff's Complaint ("Compl.") ¶ 5 [Docket No. 1].)  Plaintiff Patrick Cudahy Incorporated is a Delaware Corporation with its principal place of business in Wisconsin.  (*Id*. ¶ 6.) Patrick Cudahy Incorporated is a subsidiary of Smithfield and at all times has operated a 1,500,000 square-foot pork processing facility ("Cudahy Processing Facility") in Cudahy, Wisconsin.  (*Id*.)  The six other Plaintiffs ("Plaintiff Insurers") are insurance companies that provided different types of insurance to Smithfield and its subsidiaries, including Patrick Cudahy Inc. (*Id.* ¶¶ 7-12.)  Plaintiff Allianz Global Risks US Insurance Company ("Allianz") is a California Corporation, with its principal place of business in California.  (*Id*. ¶ 7.)  Allianz is a Plaintiff in its own right, and is a plaintiff as an assignee of ACE Bermuda Insurance Ltd. and Arch Insurance (Bermuda).  (*Id*.)  Plaintiff ACE American Insurance Company ("ACE American") is a Pennsylvania Corporation with its principal place of business in Pennsylvania.  (*Id*. ¶ 8.)  Plaintiff General Security Indemnity Company of Arizona ("GSINDA") is an Arizona Corporation with its principal place of business in New York.  (*Id*. ¶ 9.)  Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") is a Wisconsin Corporation with its main administrative office located in Massachusetts.  (*Id*. ¶ 10.) Plaintiff Tokio Marine and Nichido Fire Insurance Co., Ltd. ("Tokio Marine") is a New York Corporation with its principal place of business in New York.  (*Id*. ¶ 11.)   Plaintiffs Certain Underwriters at Lloyd's of London and Its Members Subscribing to Contract No. DP685509(1), Unique Market Reference B0509685509 ("Lloyd's") are foreign organizations and underwriters of insurance policies.  (*Id*. ¶ 12.)  At all times, Allianz, ACE

2

American, GSINDA, Liberty Mutual, Tokio Marine, and Lloyd's provided property insurance to Smithfield and its subsidiaries, including the Cudahy Processing Facility.  (*Id.* ¶¶ 7-12.)  All plaintiffs except Lloyd's are duly authorized to conduct and transact business in the State of Wisconsin.

Defendant is the federal government of the United States of America ("Defendant").  (*Id.* ¶ 13.)  The Department of the Navy ("the Navy") is a department of the executive branch of the federal government of Defendant.  (*Id.* ¶ 13.)  The United States Marine Corps ("USMC") is a component of the Navy.[1]  (*Id.*)

In 2007, Joshua Popp was a reservist in the USMC and lived at or near the Twentynine Palms USMC Base.  (*Id.* ¶ 15.)  Plaintiffs allege that around 2007, while Mr. Popp was stationed at Camp Wilson at the Base, Mr. Popp stole a M125 green star cluster flare ("the Flare") after a training exercise.  (*Id.* ¶ 17.)  Plaintiffs allege that the Twentynine Palms Combat Center Order states that the Flare is "designed to inflict casualties and destroy property and material . . . [they make] no distinction between friend or foe."  (*Id.* ¶ 19.)

In 2009, Mr. Popp was no longer with the USMC and took the Flare from the Base to his parents' house.  (*Id.* ¶ 20.)  There is no indication that anyone in the USMC knew that Mr. Popp stole the Flare.  (Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss ("Def.'s Mem. P.&A."), at 1:13-16, EFC No. 9-1.)  In celebrating the 4th of July weekend, Mr. Popp and his brother launched the Flare outside their parents' home.  (Compl. ¶¶ 21-22.)  The Flare traveled into the air, landed on the Cudahy Processing Facility, and "exploded resulting in a massive fire."  (*Id.* ¶¶ 23-24.)

---

[1] Although Plaintiffs' claims are technically against the Navy, the United States is the proper defendant here pursuant to 28 U.S.C. § 2679(a).  (Compl. ¶ 14.)

Smithfield submitted insurance claims with Plaintiff Insurers for damage caused from the fire and business interruption losses related to the fire. (*Id.* ¶ 25.)  "Pursuant to their respective policies, the Plaintiff Insurers paid Smithfield $208,000,000."  (*Id.*)  Smithfield also suffered $118,000,000 in uninsured losses, bringing the total claim to $326,000,000.  (*Id.*)  Plaintiff Insurers are allegedly, "legally, equitably, and contractually subrogated to Smithfield's rights against the United States."  (*Id.*)

Plaintiffs brings this action for claims for money damages against Defendant under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et. seq*.  Plaintiffs specifically allege that pursuant to Cal. Civ. Code § 1714 and California common law, that the Navy owed a duty to the public, including Smithfield, to keep munitions and ordnance at the Twentynine Palms Base properly "tracked, secured and stored" and to prevent such items from "finding its way into an uncontrolled and unsecured area, or into unauthorized hands" and was negligent.  (*Id.* ¶ 28.)

Plaintiffs have complied with the requirements of 28 U.S.C. § 2675 and have fully exhausted their administrative remedies prior to instituting this action.  (*Id.* at Exh. A.)

Plaintiffs filed their Complaint in the Central District of California on March 16, 2012.  Defendant filed this Motion and a Memorandum of Points and Authorities in Support of Its Motion to Transfer Venue Or In the Alternative to Bifurcate on December 18, 2012 ("Motion").  [Docket No. 36.]  Plaintiffs timely filed their Opposition on January 4, 2013 ("Opp'n") [Docket No. 39.]  Defendants timely filed their Reply brief on January 18, 2013 ("Reply") [Docket No. 42.]  The Court heard oral arguments on the motion.

### III.   STANDARD OF LAW

"For the convenience of parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) displaces the common law doctrine of *forum non conveniens* with respect to transfers between federal district courts."  *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005) (citing *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986)).  A district court has discretion in deciding whether or not to transfer.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).  Deciding whether to transfer venue requires an "individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)); *see, e.g., In re Ferrero Litigation*, 768 F.Supp.2d 1074 (S.D. Cal. 2011) (applying *Jones* factors).  The factors used in determining whether transfer is appropriate include:

> (1) the location where the relevant agreements were negotiated and executed,[2] (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones,* 211 F.3d at 498 (internal quotations omitted).

### IV.   DISCUSSION

The Court finds that the *Jones* factors weigh in favor of transfer.

---

[2] No agreements were negotiated, so this factor is not discussed.

### a. Whether Venue is Proper in the Central District of California

28 U.S.C. § 1402(b) states that "[a]ny civil action on a tort claim against the United States…may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

Here, Plaintiffs reside in multiple states, including Wisconsin and California, and therefore Plaintiffs' citizenship alone is not dispositive on this matter.  One of the complained "acts or omissions" involves Defendant's conduct at the Twentynine Palms Base in San Bernardino County, California.  (*See* Compl. ¶ 2).  However, the "underlying loss" took place in Wisconsin.  (*Id.*) Therefore, the Court finds that the matter could have been brought in the Central District of California or in the Eastern District of Wisconsin.

### b. The State Most Familiar with Governing Law

The governing law is determined by California's choice-of-law analysis which is analyzed under the "governmental interest" test. *Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1202, 254 P.3d 237, 244 (Cal. 2011). *Sullivan* outlines three factors in determining which state law applies: "First, the court determines whether the relevant law of each of the … jurisdictions with regard to the … issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the … case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state [], and then ultimately applies

1    'the law of the state whose interest would be the more impaired if its law

2    were not applied.' "  (*Id.*)

3          Under the first factor, the Court finds that since choice of law rules

4    are part of California law, the "government interest" analysis is proper.  *See*

5    *Gaffney v. United States*, CIV. A. 88-1457-Z, 1990 WL 167492 (D. Mass.

6    Oct. 26, 1990) (citing *Richards v. United States*, 369 U.S. 1, 11 (1962));

7    *Sullivan,* 51 Cal. 4th at 1202.  Defendant argues that the comparative fault

8    rules in California are also different than those in Wisconsin.  California's

9    rules assess liability in proportion to fault, regardless of the percentage that

10   the other parties are apportioned.  *See Li v. Yellow Cab Co.*, 13 Cal.3d 804,

11   810 (1975).  In Wisconsin, a person whose percentage of "causal

12   negligence" is less than 51% is limited to that amount of liability.  Wis. Stat.

13   Ann. § 895.045(1).  A person who is found to be causally negligent whose

14   percentage is 51% or more is jointly and severally liable for all damages.  *Id.*

15   The Court finds that the comparative fault rules are different in California

16   and Wisconsin, and thus there is a difference in state law.  *Sullivan,* 51 Cal.

17   4th at 1202.

18         Under the second factor, the Court finds that California has an interest

19   in applying its own law.  Many of the alleged acts or omissions at issue in

20   this case occurred on a Federal Military base in California.  California does

21   have a significant interest in ensuring that munitions from a military base

22   remain there.

23         However, the damages occurred in Wisconsin, and therefore,

24   Wisconsin also has an interest in applying its own laws.  *Love v. Associated*

25   *Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010).  In *Love*, none of the

26   parties in the suit were California citizens, and only one Insurer Plaintiff,

27   Allianz, is a California Corporation, while the others are citizens of other

28

states.  (Complaint ¶ 7.)  Though all of the illegal activity in *Love* –

misappropriation – occurred exclusively in the other venue, here, the

liability for the alleged tort took place in California while damages occurred

in Wisconsin.  The transfer of the flare from Joshua Popp to Kurtis Popp

took place in Wisconsin, as did the launch of the Flare.  The crimes were

prosecuted by Wisconsin police, and the Popp brothers were charged and

convicted in Wisconsin courts.  Therefore, if Wisconsin law regarding

comparative negligence is not applied, Wisconsin Plaintiffs Smithfield and

the Cudahy Processing Center, could be subject to a greater proportion of

liability under California's comparative negligence rules.  The law of

Wisconsin would also be more impaired if its law were not applied since the

damages occurred there, the individuals that engaged in the alleged tortious

activity set off the flare in Wisconsin, and because Wisconsin resources

were used in addressing the damages.  Therefore, the Court finds that this

factor weighs in favor of transfer.

### c.  Plaintiff's Choice of Forum

A Defendant "must make a strong showing of inconvenience to

warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v.*

*Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).  Plaintiff

originally filed the claim in Wisconsin but voluntarily dismissed the

complaint and re-filed in this district.  (*See* Motion, Exh. 8, Wisconsin

Complaint; Compl.)  Plaintiff has clearly chosen the Central District of

California as its forum for this matter, and the Court finds that this factor

weighs against transfer.

### d.  Respective Parties' Contacts with the Forum

Defendants' contacts in this district are significant as the military base

in question where part of the alleged tort took place, is within the district.

Plaintiffs' contacts in California, however, are not significant since only one Plaintiff, Allianz, is a California resident.  (*See* Opp'n at 12.)  Insurer Plaintiffs insure property both in California and in Wisconsin, and Defendant United States has a presence in Wisconsin.  The Court finds that this factor weighs in favor of transfer.

### e.  Contacts Relating To The Plaintiff's Cause Of Action In The Chosen Forum

The cause of action in the present case is brought under the FTCA, which requires using "…the law of the place where the act or omission complained of occurred…" 28 U.S.C. § 2674.  In this case, Plaintiffs bring an action on the basis of Cal. Civ. Code § 1714 and California common law, alleging that Defendant were negligent in maintaining the flare.  The Court finds that this factor weighs against transfer because the cause of action is brought due to alleged acts or omissions occurring in California.

### f.  Differences in the costs of litigation in the two forums

Defendants do not address this matter, and Plaintiffs state that the factor does not weigh in favor of either California or Wisconsin.  (*See* Opp'n at 14:18-21.)  The Court therefore finds that this factor does not weigh for or against transfer.

### g.  Availability of compulsory process to compel attendance of unwilling non-party witnesses

While the relative convenience to the witnesses is an important factor in the § 1404(a) analysis, greater weight is accorded to the convenience of third-party witnesses than to party witnesses.  *See Saleh v. Titan Corp.*, 361 F. Supp. 2d at 1160; *Gen. Ret. Sys. v. Wells Fargo*, Nos. 09-CV-1376-SI, 09-CV-1620-SI-, 2009 WL 2137094, at *5 (N.D. Cal. July 16, 2009). Unlike non-party witnesses, party witnesses do not face the same burden and expense of traveling to testify at trial, which their employer arranges and

1   pays for.  *See Gen. Ret. Sys.*, 2009 WL 2137094 at *5.

2      The Court finds that the two most important witnesses are Joshua and

3   Kurtis Popp.  They reside in Wisconsin and therefore cannot be compelled

4   to attend hearings on this matter held in this district, pursuant to Fed. R. Civ.

5   P. 45(b)(2)(B).  Plaintiffs state that the Popp brothers have been deposed,

6   and "freely and fully testified as to their actions."  (Opp'n at 13:16-20.)

7   Further, Plaintiffs state that they appeared for their depositions "without the

8   need to compel their attendance via a subpoena" and there is no evidence

9   that they would not equally be cooperative in appearing for trial in

10  California.  (*Id*. at 13:21-26.)  Though live testimony is preferred over other

11  means of presenting evidence, including depositions, witnesses that cannot

12  be compelled to attend hearings can be present via video conference.  *See,*

13  *e.g., Gore v. Stryker Corp.*, 2010 WL 3069653, at *5 (E.D. Pa. Aug. 4,

14  2010.)  However, since these key witnesses reside in Wisconsin, this factor

15  weighs in favor of transfer.

16      Four former supervisors of Joshua Popp, Anthony Atler, David

17  Langham, James Redding, and Matthew Carpenter, are no longer working

18  for the U.S. Navy and no longer live in California.  (Motion at 10:18-19.)

19  Therefore, they are now non-party witnesses.  However, these former

20  supervisors do not live in Wisconsin either, and there is no indication that

21  they would not appear in person at a future trial or via video conference.

22  (*See* Opp'n at 14:1-6.)  Therefore, as to these witnesses, this factor does not

23  tip in either direction.

24      Additionally, there are many Wisconsin state officials that responded

25  to and investigated the fire in Cudahy, Wisconsin, as well as those with

26  knowledge of maintenance of the Cudahy Processing Facility that reside in

27  Wisconsin.  (Motion at 10:20-25, 11:1-8.)  The Court finds that testimony of

28

this group of witnesses is essential to assess damages.  Though video conferencing is available to all witnesses, it is not clear from the moving papers how many witnesses are located in Wisconsin beyond those indicated in the disclosures required by Rule 26.[3]  (*See* Motion at Exhs. 4 & 5.)  The Court finds that this factor weighs in favor of transfer, since many of the non-party witnesses reside in Wisconsin.

### h.  Ease of access to sources of proof

In support of its contention that transfer is warranted since sources of proof are located in Wisconsin, Defendants cite *Saleh* that "issue is the ease of access to the sources of proof, not whether the evidence would be unavailable…."  361 F. Supp. 2d at 1166.  The facts in *Saleh* are substantially different than the facts in the instant action.  In *Saleh*, plaintiffs required access to sensitive documents concerning U.S. military policy towards Iraqi detainees and the U.S. military's interrogation records.  *Id*. at 1166-1167.   These military records could only be viewed in a "sensitive compartmentalized information" facility, which favored the transfer in *Saleh*.  *Id*. at 1167.  However, the sources of proof in this action can easily be accessed in California, as documents, photographs, and practices and policies related to the acts or omissions in California and Wisconsin are not alleged to be of a sensitive nature, and thus there is no burden in transporting such documents, particularly through electronic means.  *See, e.g., Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal 2008).  Additionally, as Plaintiffs indicate, most party witnesses referred to by Defendant are Smithfield employees, and Plaintiffs have assured this Court that they would be made available for trial.  The Court find that this

---

[3] The Rule 26 disclosures, which are attached to the Motion at Exhibits 4 & 5, list over 100 potential witnesses from multiple states that are "likely to have" discoverable information.

factor weighs against transfer because the sources of proof in this matter can be made available in California and party witnesses have stated they would be available to testify in this district.

However, the *Jones* factors together favor transferring this case to Wisconsin. *See Jones,* 211 F.3d at 498.

### i. Whether Defendant has Improperly Delayed Seeking Transfer or is Forum-Shopping

Though this is not a *Jones* factor, Plaintiffs argue that Defendant has improperly delayed seeking transfer. (Opp'n at 7-9.) The Court finds that since there are no time limits on when to move to transfer, *see Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991), and Defendant has been diligent in preparing for litigation within this district. Therefore, this factor weighs in favor of transfer.

## V.   BIFURCATING PROCEEDINGS INTO A LIABILITY PHASE AND A DAMAGES PHASE

The Court denies without prejudice the request to bifurcate proceedings as moot because the motion to transfer venue is granted.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Transfer Venue and **DENIES WITHOUT PREJUDICE** Defendant's Motion to Bifurcate Proceedings. The Court Hereby **ORDERS** the Case be transferred to the Eastern District of Wisconsin at Milwaukee.

**IT IS SO ORDERED.**

DATED: June 7, 2013

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE